*H. Cooper*, for the plaintiff.

*D. H. Colerick* and *J. G. Walpole*, for the defendant.

---

## The State *v.* Beackmo.

The Circuit Court, on appeal from an award of damages made under the improvement act of 1836, permitted the claim to be amended. *Held*, that the leave to amend, the record not showing what the amendment was, must be presumed to be correct.

Aliens who have declared their intention, according to law, to become citizens of the *U. States*, may hold land in fee-simple in this state.

The refusal of an instruction to the jury, if the evidence do not appear, will be presumed to be correct.

According to the improvement act of 1836, the assessment and payment of damages for injuries done to real estate in constructing the *Wabash* and *Erie* canal, must be in gold and silver.

Nov. Term,
1846.

THE STATE
v.
BEACKMO.

Wednesday,
December 2.

Had the act of 1842, relative to said canal, provided for the assessment and payment of such damages in any thing other than gold and silver, the provision would have been unconstitutional.

But it was not the intention of the legislature, by that act, to change the law on the subject.

ERROR to the *Tippecanoe* Circuit Court.

PERKINS, J.—This was a proceeding originally instituted under the 17th section of the act providing for a general system of internal improvement, approved *January* 27, 1836, before the board of commissioners having the superintendence of the public works of *Indiana*, to recover damages for injury done to real estate by the construction through it of the *Wabash* and *Erie* canal. An appeal was taken from the award of damages by the arbitrators to the Circuit Court. The claimant there obtained a verdict for a fraction over 700 dollars, and a judgment, payable in canal-scrip, upon the verdict.

Several errors are alleged to have intervened in the proceedings, of which the first that we shall notice is the leave given to amend the claim for damages.

The record states that leave to amend was given, but it does not show the character of the amendment made. The section of the internal improvement act above cited, provides that appeals to the Circuit Court from assessments of damages before the commissioners, shall be governed in all things by the law relative to appeal cases from justices of the peace. In those cases, amendments within certain and liberal limits are allowed in the Circuit Court. We presume the amendment in this case was properly permitted.

The plaintiff in error asked the Circuit Court to instruct the jury, "that if they believed *Beackmo*, the claimant, to have been an alien at the time of filing this claim for damages, they must find for the defendant." The refusal to give this instruction constitutes the second error complained of. The refused instruction must have been asked in the broad terms in which it was stated, upon the assumption that no alien could, as against the state, be the owner of land in *Indiana*. The assumption was not true. Aliens having declared their intention, pursuant to law, to become citizens of the *United States*, have, since 1818, been capable of fee-sim-

Nov. Term,
1846.

THE STATE
v.
BEACKMO.

ple ownership of land in this state. R. S. 1838, p. 67. If, therefore, it was proved on the trial, that *Beackmo* had, prior to the purchase of the land damaged, taken that step towards citizenship, the instruction would have been unquestionably wrong. The evidence is not before us, and the presumption is in favour of the correctness of the decision of the Court in refusing the instruction.

The Court gave the jury the following instruction, viz., " That in estimating the claimant's damages, they should find them not in cash but in canal-scrip, and should increase them as much above their cash value as the scrip, the currency in which they were payable, was depreciated below par." To this instruction the defendant below excepted, and it raises the important question in the cause. Scrip being at the time at a depreciation of near fifty *per cent.*, the effect of the instruction was to nearly double the verdict of damages for the claimant. In considering this point, we will first look at the acts of the legislature regulating the assessment and payment of damages in this class of cases. The extension of the *Wabash* and *Erie* canal, in the prosecution of which the alleged injury in the present case was committed, was embraced in the general internal improvement act of 1836; and the only provision, in regard to the mode and principle of assessing damages, is found in that act. It contemplates their assessment in cash—their measurement by the constitutional standard of value, and by it alone; and their payment in the same. The act of 1842 (Laws of 1842, p. 24), providing the means for prosecuting this extension of the canal, and under which the decision of the Court below was made, makes no change in the mode or principle of determining damages, but enacts that all the expenses of constructing the work shall be paid in canal-scrip. It is true that the act of 1836 does not say, in express terms, that the damages shall be assessed and paid in cash, but it authorizes those acts to be performed in no other manner, and no other was contemplated. We find, then, nothing in the letter of these laws justifying the instruction under consideration; nor do we think it better corresponded with the intention of the legislature in enacting them. We suppose that one object, at least, which the legislature had in view in requiring scrip-payment by the act of

1842, was to defray the largest possible amount of expenses, to construct the longest possible line of canal, with the limited means appropriated to that purpose. It can require no argument to show, that that object would be better promoted by adhering to the plain import of the language of the laws upon the subject, than by the construction of those laws adopted by the Court below. It will hardly be contended, we think, that the superintendent of the canal could claim a quantity of scrip, that would bring in market the amount of his salary in cash. If he could not, neither can the claimant of damages, for the law of 1842 specifies no distinction between them. Indeed, to give the act of 1842 the construction adopted by the Circuit Court would render useless the provision for payment in scrip, for the state might as well pay the cash at once as to pay scrip enough to bring the cash at the nearest broker's office. Perhaps, were it in her power, it would be better for her to do it, and reserve to herself the chance of a rise in the value of the scrip. The instruction was erroneous.

We have thus far viewed the act of 1842 as extending to cases like the one under consideration. If this view be correct, as was held by the Circuit Court, there is another question in the cause of graver importance, an opinion upon which we might now withhold, but which we think it proper to express. That question involves the constitutionality itself of the act of 1842, in requiring damages to real estate to be paid in canal-scrip.

Of its validity so far as it relates to the salaries of officers, the wages of workmen, the purchase of materials, &c., we have no doubt. The state, as well as an individual, may make a valid contract to pay in specific articles; but the appropriation of private property to public use is accomplished, not by contract but by force. The will of the owner is not consulted; his opposition is unavailing. He is compelled to yield up his most cherished possession to the right of eminent domain which the state possesses. But the constitution here interposes, and declares that a "just compensation" shall be made for the property so appropriated—that the injured party may have his damages assessed by a jury of the country; and it will not be disputed that when they are so as-

sessed, they become a "debt", in the constitutional sense of the word, and being so, the constitution of the *United States* restrains the state from enforcing their payment in any thing but gold and silver.

That a state law requiring such damages to be paid in canal-scrip, is repugnant to the aforementioned provision of the federal constitution, is so clear that argument would but tend to obscure the proposition. A word or two upon the subject of "just compensation" may not be misplaced. It seems to us that the clause in our own constitution requiring it, should be carefully guarded and most scrupulously observed. In all enlightened nations, even where there is no constitutional requirement on the subject, we are told by writers on public law, that to maintain secure to the citizen the enjoyment of his private property is one of the chief ends of government and a most sacred obligation. Vattel's Law of Nations, 5, 113.—Rutherforth's Inst. 372.—2 Burlamaqui, 150.—1 Am. Law Mag. 318. In this age of improvement, there is perhaps no point at which the rights of the citizen are more likely to be overlooked and invaded by the government, and consequently none where they should be more vigilantly watched, than at this.

What, then, constitutes a "just compensation" for private real property appropriated to public use, considered both as to the amount to be paid, and the manner of payment? A precise and definite answer to this question is not very easily given. It is a difficult matter to estimate the amount of compensation to which a man is entitled for the loss of such property, chosen by himself. A piece of ground may possess a value in the eye of its owner, not appreciated by others. These considerations form the principal ground of chancery jurisdiction in decreeing the specific performance of contracts in relation to realty. The nearest approach to a just compensation would seem to be to replace to the loser other lands equally valuable and desirable to him with those taken; but this cannot, at least often, be done; and the next best alternative appears to us to be to pay him the fairly adjudged damage he sustains on account of the lands appropriated, in that medium of exchange which has a determined value and universal availability in the procurement of property. And

we think we hazard nothing in saying, that a law authorizing compulsory payment for real estate or damage thereto, when appropriated by the state or its authority, in any thing but gold and silver, would not make adequate provision for a just compensation. Admit that it authorized the giving in quantity what should be estimated of the value in cash of the damages, and that in particular instances the compensation might be satisfactory, still we should regard the law objectionable. The thing given might not always be available at the time its worth might be needed by the injured individual; it might depreciate after assessment and before payment. Such a law, in short, would take from the owner a certainty, permanent property of his own choice, and subject him to the reception, in compensation, of what he might not want, and to the risk of the sudden fluctuations to which it might be exposed. Nothing short of gold and silver, the value of which is comparatively certain and changeless, and with which, better than with any thing else, can at any time be commanded what the possessor may desire, can adequately compensate a proprietor for what he is compelled to surrender to the public use.

To prevent misconstruction, we may remark that in what we have said we refer only to the real damage actually sustained by the proprietor, and take it for granted the jury are to be governed, in determining the amount of that damage, by the principles laid down in *M'Intire* v. *The State*, and *The State* v. *Digby*, 5 Blackf. 384, 543.

Were the act of 1842, then, rightly regarded as extending to the compensation to be made for damage to real estate taken for the canal, it is clear we should be compelled to declare it, that far, void. But we do not think it does so extend. Its language does not necessarily require so broad a construction, and we are to presume the legislature did not intend to pass its constitutional limits. As to these damages, the law stands as it did before the passage of the act in question.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*W. M. Jenners* and *R. Jones*, for the state.

*D. Mace*, for the defendant.