## ASHBY *v.* WEST.

In replevin in the detainer, the general issue, under the R. S. 1843, puts in issue the property of the plaintiff.

It is no objection to the competency of a witness, in actions of replevin or trover, that he is called to prove the title of the property sued for to be in himself.

In replevin by *A.* against *B.* for a quantity of flour, *A.* first read in evidence a written contract entered into with him by *C.*, whereby *C.* agreed to manufacture, within a time limited, at his, *C's.*, mills, for *A.*, 2000 barrels of superfine flour, *A.* to furnish the wheat, &c. He also proved that, soon after the execution of the contract, he delivered large quantities of wheat to *C.* pursuant thereto; that the flour in controversy was manufactured by *C.* out of said wheat, and shipped by him to *B.'s* warehouse; that *B.* gave *C.* warehouse receipts for the flour; and that *C.* transferred those receipts to one *D.* *A.* then offered to prove the declarations of *C.* that when he, *C.*, received said wheat, he said it was *A.'s* wheat; and when he shipped said flour to *B.*, he said it was *A.'s* flour. The evidence of these declarations was objected to, as being hearsay testimony, but the objection was overruled. *Held*, that the objection should have been sustained.

*A.* having proved the contract and facts mentioned and a demand of the

flour of *B.* as his property, and, also, an offer to pay *B.* his charges on the same and his refusal to deliver it; and the court having admitted proof of the declarations of *B.* as above mentioned; and *A.* having given in evidence said warehouse receipts and their assignment to *D.* to secure a loan; *A.* then offered to read the deposition of *B.*, which was in relation to facts directly concerning the property in the flour, but the Court rejected the deposition.  *Held,* that the rejection was wrong.

The contract between *A.* and *C.* was one of bailment and not of sale.

Instructions given to the jury will be presumed to be correct, where the transcript does not profess to contain all the evidence.

Nov. Term,<br>1851.<br>ASHBY<br>v.<br>WEST.

ERROR to the *Dearborn* Circuit Court.

Wednesday,<br>December 3.

BLACKFORD, J.—This was an action of replevin, brought by *West* against *Ashby,* for 420 barrels of flour. The *gravamen* is, the unlawful detainer of the flour. The defendant pleaded the general issue, and also the following special pleas: 1. Property in himself; 2. Property in *Edmund Hale;* 3. Property in *William Bradley.* Replications in denial of the special pleas.

The plaintiff, *West,* previously to the trial, moved the Court to suppress the deposition of *Miles A. Bradley;* and the motion was sustained.

During the trial, the plaintiff offered to prove certain declarations which had been made by *William Bradley.* The evidence was objected to; but the objection was overruled.

The defendant, *Ashby,* during the trial, offered in evidence the deposition of *William Bradley.* This deposition was objected to by the plaintiff, and the objection was sustained.

The parties respectively asked of the Court various instructions to the jury. Those asked for by the plaintiff were given; and those asked for by the defendant were refused.

Verdict and judgment for the plaintiff.

The first proceeding in this cause which is objected to, is the suppression of the deposition of *Miles A. Bradley,* which deposition was offered by the defendant. The ground of the plaintiff's objection to the deposition is, that the witness was interested in favor of the defendant.

In determining this point, the Circuit Court had nothing

ASHBY
v.
WEST.

before it but the pleadings in the cause and the deposition itself.

The real question in issue was, whether or not the flour sued for was the property of the plaintiff? The general issue, under the statute, raised that question. R. S. 1843, p. 701.

The deposition we are examining states, that *William Bradley* deposited the flour as his own with *Ashby*, the defendant, and took the receipts of *Ashby*, a warehouse man, for the flour; that said *William Bradley* assigned those warehouse receipts to *Edmund Hale* as a security for a loan of money; and that, afterwards, said *William Bradley* assigned his remaining interest in the flour to the witness, *Miles A. Bradley*, as a security for a debt due from the assignor to the witness and another person.

The plaintiff contends that the witness had an interest in the flour sued for, and was therefore interested in defeating the suit. But it is no objection to the competency of a witness, in actions of replevin or trover, that he is called to prove the title of the property sued·for to be in himself; as it makes no difference to the witness, in a legal point of view, which of the parties succeeds. The verdict and judgment in such cause would not be evidence in a subsequent action brought by the witness for the property; he not being a party or privy to the suit. *Ward* v. *Wilkinson*, 4 Barn. and Ald. 410.

The next question is whether the declarations of *William Bradley*, which the plaintiff was allowed to prove, were admissible evidence?

The plaintiff first read in evidence the following written contract entered into with him by *William Bradley*:

" I have this day contracted with *C. W. West & Co.*, to manufacture for them, at my mills in *Brookville, Ind.*, in all of the months of *August* and *September* next, 2000 barrels of superfine flour, *Cincinnati* inspection guarantied, on terms as follows—they to furnish the wheat in barrels at *Metamora, Laurel, Null's* mills, and *Cambridge City*, viz., five bushels of wheat and the barrel, for a barrel of flour. The flour to be delivered on

board of boats at *Brookville*, at one cent per barrel expense of storage and drayage. The wheat to be taken at 60 pounds to the bushel. About 2500 bushels of said wheat are at *Metamora;* about 300 bushels at *Laurel;* about 200 bushels at *Null's* mills; and the balance at *Cambridge.* The surplus barrels and the wheat over the 2000, I will buy, if we can agree on the price, if not, will hold them subject to your order. *Cincinnati, July* 28th, 1847. (Signed) *Wm. Bradley.*"

The plaintiff also proved that soon after the execution of said contract, he delivered large quantities of wheat to said *William Bradley* under the contract; that the flour in controversy was manufactured by said *Bradley* out of said wheat, and was shipped by him to the defendant's warehouse; that the defendant gave said *Bradley* warehouse receipts for the flour; and that, he, *Bradley*, transferred those receipts to a third person.

The plaintiff then offered to prove the declarations of said *William Bradley*, hereinbefore mentioned, namely, that when he, *Bradley*, received said wheat, he said it was *West's* wheat; and when he shipped said flour, he said it was *West's* flour. The evidence of these declarations was objected to by the defendant as being hearsay evidence. It is a general rule that declarations, made by a third person not under oath, are not admissible in evidence. There are some exceptions to this rule, but they do not embrace the evidence in question. The issue in this case was, whether or not the flour sued for was the plaintiff's property? and the burthen of proof was on the plaintiff. The defendant held the flour for the person to whom the warehouse receipts had been assigned; and we think the plaintiff's case was to be proved independently of the assignor's declarations as to the property. The assignor himself, for anything that appears, could have been examined as a witness for the plaintiff.

Another question in the cause is, as to the admissibility in evidence of the deposition of *William Bradley.*

Before this deposition was offered in evidence, the plaintiff had proved said written contract between himself

and *William Bradley; Bradley's* receipt of the wheat under the contract, and his manufacturing of it into flour; his shipment of the flour from *Brookville* to *Harrison*, and depositing the same with the defendant as a warehouse man. The plaintiff had also proved a demand of the flour, as his property, of the defendant—offering to pay the latter's charges on the flour—the defendant's refusal to deliver the flour, and the aforesaid declarations of *Bradley.* The defendant had given in evidence the before-mentioned warehouse receipts; their assignment by *William Bradley* to *Edmund Hale* to secure a loan; and said *Bradley's* sale of his remaining interest in the flour to *Miles A. Bradley.*

At that stage of the cause, the defendant offered to read the said deposition of *William Bradley.* That deposition was a very important one for the defendant; because *William Bradley* there states, *inter alia,* that the greater part of the flour now sued for was in his mill, before he received any of the plaintiff's wheat under said written contract.

The plaintiff objected to this deposition, on the ground that the witness was interested in favor of the defendant.

The objection would be clearly unfounded, if the witness had not disposed of the flour; because, in that case, his legal rights would not have been affected by the success of either of the parties. Suppose the verdict and judgment in this suit should be in favor of *Ashby;* and the witness (supposing him still the holder of the warehouse receipts) should afterwards sue *Ashby* for the flour; that verdict and judgment would not be admissible in evidence for the witness. Again, suppose the verdict and judgment in this suit should be for *West,* and the witness (not having parted with said receipts) should afterwards sue *West* for the flour; *West* could not give said verdict and judgment in evidence against the witness. In neither of those cases, would the witness be a party or privy to the verdict and judgment.

That this deposition of *William Bradley,* were he still the holder of said receipts, would be evidence for the de-

fendant, appears by the following case: Trover by *Hearne* against *Turner* for two promissory notes. The defendant pleaded that before *Hearne* was possessed of the notes, one *Mytton* was lawfully possessed of them as of his own property; that the notes had been wrongfully delivered to *Hearne;* whereupon the defendant as the agent of *Mytton*, and by his direction and authority, took the notes out of the possession of *Hearne*. The replication traversed the property in *Mytton*. To prove that *Mytton* was the owner of the notes, *Mytton* himself was called as a witness. He stated, on the *voir dire*, that he had not indemnified the defendant, and that he had nothing to do with the action. The Court held that *Mytton*, at common law, was a competent witness for the defendant. *Hearne* v. *Turner*, 2 Mann., Granger, and Scott, 535.

We must next consider whether *William Bradley's* assignment of the warehouse receipts makes any difference. If *Hale*, the assignee, had taken possession of the flour, and this action had been against him, it may be that *Bradley*, the assignor, would not have been a competent witness. But here *Ashby*, not *Hale*, is the defendant, and should *Ashby* lose this suit, and *Bradley* be afterwards sued, on his warranty of title, by *Hale*, the verdict and judgment against *Ashby* would not be evidence for *Hale*, the latter not being a party or privy to the first suit.

We are therefore of opinion that the deposition of *William Bradley* ought not to have been rejected.

The first instruction asked for by the defendant and refused, was, that the written contract between the plaintiff and *William Bradley* (which is hereinbefore copied) is a contract of sale. We are clearly of opinion that that contract is one of bailment, and not of sale. The refusal of the other instructions asked for by the defendant, must be presumed to be correct, as the transcript does not profess to contain all the evidence. *The State* v. *Beackmo*, 8 Blackf. 246.

The first instruction to the jury, given at the plaintiff's request, was, that said written contract was one of bailment. That is unobjectionable. The others were as

follows: Secondly, That if the jury believe from the evidence that the flour in question was manufactured from the identical wheat received under the contract with *West*, they must find for the plaintiff; Thirdly, That if the jury believe that a small portion of the flour in question was manufactured out of wheat bought and exchanged for by *Bradley*, and the balance out of the identical wheat delivered to him by *West*, and such admixture of the wheat was without the consent of *West*, the flour in question is the property of the plaintiff, and the jury must find for him. These two last-mentioned instructions are relevant to the issue, and must be presumed (all the evidence not being given,) to be correct.

The judgment must be reversed. The depositions of *Miles A.* and *William Bradley* ought to have been admitted in evidence; and the evidence of the declarations of *William Bradley* should have been rejected.

*Per Curiam.*—The judgment is reversed, and the proceedings subsequent to the suppression of the deposition of *Miles A. Bradley* inclusive, are set aside, with costs. Cause remanded, &c.

*P. L. Spooner* and *J. Ryman*, for the plaintiff.

*D. S. Major* and *A. Brower*, for the defendant.