May Term, 1856.

EWARD *v.* THE LAWRENCEBURGH AND UPPER MISSISSIPPI RAILROAD COMPANY.

EWARD
v.
THE LAW-
RENCEBURGH
AND UPPER
MISSISSIPPI
RAILROAD
COMPANY.

The charter of a railroad company contained a provision that where any person through whose land the road might run should refuse to relinquish the same, or when a contract between the parties could not be made, the corporation might give notice to a justice of the peace, &c., of the facts, and the justice should summon the owner, &c., and appoint twelve disinterested men, &c., who, after having taken an oath, &c., should view the land, &c., and after having taken into consideration the advantages as well as disadvantages the road might be to the same, should report whether the person was entitled to damages or not, &c.

*Held,* that this provision was contrary to common right, and should be strictly construed.

*Held,* also, that it was inapplicable except where the company had taken the initiative in assessing the damages.

*Held,* also, that it was only applicable where the land appropriated was part of a tract with which the road came in contact.

*Held,* also, that if, when the assessment was made, the road was not in contact with the land taken, the circumstance that it had been, as originally laid out, was of no importance.

Where the instructions of the Court, under every supposable state of facts, are erroneous, the judgment will be reversed.

At law, under the former system of pleading, a demurrer was waived by pleading over.

APPEAL from the *Decatur* Circuit Court.

Friday, June 20.

STUART, J.—Trespass, commenced in *April*, 1853, under the old practice. Verdict and judgment for the defendant. *Eward* appeals.

The only question sought to be presented by counsel arises under the sixth plea. The substance of that plea is, that the location of the road, and construction as located, is advantageous to *Eward's* land, to a much greater amount than the damages complained of, viz., to the amount of 3,000 dollars. Demurrer to the plea overruled.

The record does not purport to contain the evidence; but a bill of exceptions discloses that the Court received evidence going to show the advantages of the railroad to *Eward's* property, and that the admission of such evidence was objected to at the proper time.

Regarding the question on its merits, aside from authority, it does not seem very intricate. In plain terms, it is

May Term,
1856.

EWARD
v.
THE LAW-
RENCEBURGH
AND UPPER
MISSISSIPPI
RAILROAD
COMPANY.

this: whether one man can appropriate the property of another, and, when sued for compensation, set off or recoup the advantages, real or imaginary, resulting to the owner from such appropriation.

It is almost too trite to observe, that in every well-ordered civil government, the property of the citizen is held sacred. Every citizen has a right to use his own property as he pleases, so that he do not injure that of his neighbor. Subject to that limitation, and to such burdens as are imposed in common on all for the support of the government, his dominion is absolute. No person or corporation has any right to interfere, even to confer advantages, by the use of his property against his will. It is, however, further true, as a limitation, that private property is subject to be taken by the public, or by persons clothed with *quasi* public powers and duties; but then only upon a just money compensation being made to the owner.

It is so clearly inconsistent with the right of private property that appropriation should be compensated by real or supposed advantages, it needs only to be stated to be repudiated at once. That *A.* should be permitted to take five of *B.'s* ten acres for a particular use, against the will of the owner, and in lieu of payment, insist that the use made of the five acres taken, rendered the remaining five more valuable to the owner than the whole ten were before, is not even a plausible pretext to disguise the plunder.

Such compensation is so wholly illusory—so utterly subversive of every idea of private right—as to carry its own refutation. Half the land was not taken for the benevolent purpose of doubling the other half. It was taken for the sole benefit of the appropriator. Whether appropriated by natural or artificial persons, can, on principle, make no difference. The only just measure of damages is the cash value of the thing appropriated, without reference to future, contingent, illusory considerations.

This is the general scope of the reasoning in *The State* v. *Beackmo*, 8 Blackf. 246, and the conclusion, adhering to the doctrine promulgated in the construction of the inter-

nal improvement act of 1836, is what logicians call a *non sequitur*.

May Term, 1856.

EWARD
v.
THE LAW-
RENCEBURGH
AND UPPER
MISSISSIPPI
RAILROAD
COMPANY.

To remedy this evil, the legislature, at the commencement of the second era of internal improvement, interposed as follows: "In estimating the damages [for property taken] no deduction shall be made for any benefit which may be supposed to result to the owner from the contemplated work." 1 R. S., p. 422.—2 *id.* 193. But the wrong here complained of was done long before this remedial statute took effect, and is not governed by its provisions.

In the case at bar, the railroad company claim the right to have the advantages as well as the injuries taken into consideration in assessing the damages, under the express provisions of their charter. The 15th section of the act incorporating the company, reads, so far as it is material to this point, thus:

"That in all cases where any person through whose land the road may run, shall refuse to relinquish the same, or when a contract between the parties can not be made, it shall be lawful for the corporation to give notice to some justice of the peace in the county where the difficulty may occur, that such facts do exist; and such justice of the peace shall thereupon summon such owner to appear before him on a particular day, within ten days thereafter, and shall appoint twelve disinterested men of the county, who shall, after taking an oath faithfully and impartially to assess the damages, if any, view the land and materials, and after having taken into consideration the advantages as well as disadvantages the road may be to the same, shall report thereon whether such person is entitled to damages or not, and, if so, how much," &c. Local Laws 1847–8, p. 435.

This act is clearly against common right, and must receive a strict construction. *Orr* v. *Baker*, 4 Ind. 86. So construed, it is clearly inapplicable to the present case—

1. Because, to entitle the company to its provisions, it must appear affirmatively that they have taken the initiative in assessing the damages. This the section quoted

May Term,
1856.

EWARD
v.
THE LAW-
RENCEBURGH
AND UPPER
MISSISSIPPI
RAILROAD
COMPANY.

requires. Its provisions can only avail them in defence, when they show a substantial compliance on their part, or a waiver of such compliance on the part of *Eward*.

2. This section can not avail the company here, because the suit in this case is not by a person through whose land the road runs. The gist of the declaration is for injury to land through which the road does not now run. This is also everywhere apparent in the course of evidence and charge of the Court, as shown in the bill of exceptions. The road, originally located and work done on the plaintiff's land, seems to have been relocated a mile or so from it. The suit is for acts done under the first location. To admit evidence of the advantages of the road to *Eward*, over his objection, was clearly erroneous. No such state of facts is contemplated by the charter. It is the person through whose land the road may run, who is subject to have the advantages of such road taken into consideration in assessing the damages. It is not easy to see how even any liberality of construction could make this provision apply to persons whose lands lie a mile and a half from the road. Even under the internal improvement act of 1836, that doctrine was expressly repudiated. *The State* v. *Digby*, 5 Blackf. 543. The land taken must, according to this case, be part of a tract with which the contemplated improvement came in contact.

Whether the railroad company had a right to change the location of their road, we do not propose to inquire. But admitting, for the purposes of this case, that they had, they were clearly liable for injuries done to land, and could not shield themselves under the provisions of the 15th section, *supra*.

The plaintiff, *Eward*, seems to have contested this question at every step. He demurred to the sixth plea setting up that matter; but the demurrer was overruled. As the cause was tried in *April*, 1853, under the old system, his pleading over waived the demurrer. The same point is saved by his objection to the evidence and exception to the opinion of the Court in admitting it. It is saved also in a bill of exceptions to the instructions given. The

ruling of the Court being erroneous in this regard, under any supposable state of the facts, must for that error be reversed.　This cause stands precisely like *Murray* v. *Fry*, 6 Ind. R. 371.

Having failed to render compensation by their own act, under their charter, the company is liable to *Eward* in this form of action.

DAVISON, J., was absent.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. S. Scobey*, for the appellant.

*W. J. Peaslee*, for the appellees.