## EWING and Others *v.* FRENCH.

The plaintiff was a trader in partnership with others, and the agent of his partners; but in a contract with the defendants, he had acted in his own name. *Held*, that the suit on this contract was correctly brought by the plaintiff without joining his partners.

May Term,
1825.

EWING
v
FRENCH.

Thursday,
May 12.

A quantity of wheat was delivered by the plaintiff to the defendants at their mill, to be exchanged for flour. The defendants put the wheat into their common stock of wheat. The mill was afterwards casually destroyed by fire, and the defendants refused to deliver the flour. *Held*, that the plaintiff had a good cause of action.

APPEAL from the *Knox* Circuit Court.

BLACKFORD, J.—Assumpsit by *French* against *Ewing* and others. The declaration contains a general count for goods, wares, and merchandise; and a special one, for wheat sold and delivered to be paid for in flour. Plea, non-assumpsit. On the trial, three bills of exceptions were taken by the defendants to the opinion of the Court, in refusing certain instructions to the jury. Verdict and judgment for the plaintiff. The defendants appeal.

According to the first bill, there was proof that the plaintiff was a trader in partnership with others; that he was agent for his partners; that in the contract with the defendants, he acted in his own name alone. Upon this evidence, the defendants requested the Court to instruct the jury, that the plaintiff ought not to recover. It is contended, that all the partners of the plaintiff should have been joined in the action. If the evidence had been, that the contract declared on was made by the defendants with the partnership, the instruction would have been proper. In such case, the contract proved to have been made with several, would not have been the same with the contract declared on as made with one. The evidence however was otherwise. To be sure, the plaintiff was engaged in mercantile business with others, but the proof is express that, in this affair with the defendants, "he dealt with them in his own name alone." It was then an individual transaction on the part of the plaintiff, and the action was correctly brought in his own name (1).

By the second and third bills of exceptions, it appears that a quantity of wheat was delivered by the plaintiff to the defendants at their mill, in *July* and *August*, 1820, to be exchanged for flour; that the wheat was thrown by the defendants into the common stock of the company; that in *February*, 1821, the mill was casually destroyed by fire; and that in *June*, 1821, the flour was demanded and refused. Upon this evidence, the defendants required the Court to instruct the jury, that should they be of opinion, from the testimony, that the wheat in the declaration mentioned, was sent to the defendants' mill to be ground, and then to be exchanged for flour, and that the mill was burnt before demand

and delivery of the flour, without fault of the defendants, the plaintiff ought not to recover. This instruction was refused. We think the Circuit Court was right. By the contract, flour was to be delivered in exchange for the wheat. From the moment the defendants received the wheat, they became liable for the flour. There was no bailment in the case. The wheat itself was not to be returned, nor the identical flour manufactured from it. The wheat was thrown into the common stock of wheat in the mill belonging to the company, and flour was to be delivered in exchange. It was a sale of wheat, to be paid for in flour. After delivery, the wheat became the property of the defendants, and of course the flour when manufactured from it. The loss of either, by the burning of the mill, must be borne by the defendants. If the flour contracted for had been prepared, and notice given that it was ready for delivery, previously to the fire, the case would have been otherwise. We have been referred to *Seymour* v. *Brown et al.* 19 Johns. R. 44. That decision, it must be admitted, cannot be reconciled with ours; but as an independent tribunal, we must, after consulting the authorities within our reach, determine for ourselves as to what the law is, however unpleasant it may be to differ from a Court, so eminently distinguished as that of *New-York* (2).

*Per Curiam.*—The judgment is affirmed, with one *per cent.* damages and costs.

*Tabbs* and *Dewey*, for the appellants.

*Judah*, for the appellee.

(1) Vide *Hansel* v. *Morris*, ante, p. 307, and note.

(2) The following observations of a distinguished writer, accord with the doctrine in the text: "The distinction before taken in regard to *loans*, between an obligation to restore the *specific* things, and a power or necessity of returning *others equal in value*, holds good likewise in the contracts of *hiring* and *depositing*: in the first case, it is a regular *bailment*; in the second, it becomes a *debt*. Thus, according to ALFENUS in his famous law, on which the judicious *Bynkershoek* has learnedly commented, 'if an ingot of silver be delivered to a silversmith to make an urn, the *whole* property is transferred, and the employer is only a *creditor* of metal equally valuable, which the workman engages to *pay* in a certain shape:' the smith may consequently apply it to his own use; but if it perish, even by unavoidable mischance or irresistible violence, he, as owner of it, must abide the loss, and the creditor must have his urn in due time. It would be otherwise, no doubt, if the *same* silver, on account of its peculiar fineness, or any uncommon metal, according to the whim of the owner, were agreed to be *specifically* re-delivered, in the form of a cup or a standish." Jones on Bailment, 105, 6.