May Term,
1859.

CARLISLE
v.
WALLACE.

CARLISLE *v.* WALLACE.

*A.* placed four hundred bushels of wheat in the mill of *B.*, upon the terms that the latter might mix it with his own, convert it into flour when he pleased, sell the flour, and appropriate the proceeds to his own use, but that, whenever *A.* saw fit, he had a right to exact from *B.* the same quantity in kind of wheat, or the amount of flour so much wheat would make, or the then price of wheat per bushel, in money. After the delivery of the wheat, but before *A.* had made a demand of *B.* for anything in return, the mill, and the wheat then in store in it, were consumed by fire.

*Held,* that the contract was one of sale, and not of bailment, and the loss must fall on *B.*

It was claimed by the defendant, in this case, that it was a custom at *Indianapolis*, that when a miller received wheat upon the terms above stated, it was at the risk of the seller till he called for his pay. *Held,* that such a custom could only be proved by showing that the *Indianapolis* millers had long been in the habit of thus receiving wheat, and losing it, or having it destroyed, and that the sellers did not claim pay for it.

*Friday,*
*May 27.*

APPEAL from the *Marion* Court of Common Pleas.

PERKINS, J.—*Wallace* sued *Carlisle* for the value of wheat, which he had deposited in store with *Carlisle*, who was a miller. The plaintiff declared in assumpsit and trover, and in his reply he set up a claim for the destruction of the wheat by fire, by the carelessness of *Carlisle*. The Court overruled a demurrer to the complaint, for a misjoinder of causes of action, and held, also, that the reply was in conformity with the statute. The defendant, in his answer, set up a usage of trade, that when wheat was placed in store with a miller, without any further agreement, it remained at the risk of the depositor; and he might afterwards call for the same quantity of the same quality of wheat, or sell it to the miller, as they might agree.

The evidence is not upon the record, and the questions in this Court are raised only upon instructions given and refused.

As the evidence is not before us, we are unable to discover the precise facts of the case, and can with difficulty determine upon the accuracy of qualifications in instructions, as applied to the evidence.

It would seem from the record and arguments of counsel, that *Wallace* placed in the mill of *Carlisle* some four hundred bushels of wheat, upon the terms that the latter was at liberty to mix it with his own, convert it into flour when he pleased, sell the flour, and appropriate the proceeds to his own use; and, whenever *Wallace* saw fit, he had a right to exact from *Carlisle*, the same quantity in kind of wheat, or the amount of flour so much wheat would make, or the then price of wheat per bushel in money.

After the delivery of the wheat, but before *Wallace* had made a demand of *Carlisle* for anything in return, the mill of the latter, and the wheat, then in store in it, were consumed by fire; and the question is, who is to bear the loss of the wheat?

It is necessary, in answering this inquiry, to first ascertain the character of the contract under which the wheat was delivered to *Carlisle*. Was it one of bailment, or of sale?

As neither the identical wheat, nor the flour made from it, was to be returned to *Wallace*, and the wheat was not to be kept separate, but to be mixed with that of *Carlisle*, and used by him when he pleased, the contract of delivery must be regarded, upon its terms, as one of sale and not of bailment. *Ewing* v. *French*, 1 Blackf. 353.—*Ashby* v. *West*, 3 Ind. R. 170.—*Pribble* v. *Kent*, 10 *id.* 325.—*Mason* v. *Beard*, 2 *id.* 505.—Ind. Dig., pp. 205, 725.

The contract being one of sale, the property, hence, being in *Carlisle*, the loss must fall on him, unless there are other elements entering into the case which may control it.

It is not claimed that there was any special stipulation between the parties that could have such effect. But it is claimed to have been a custom of trade at *Indianapolis*, that when millers received wheat upon the terms above stated, it was at the risk of the seller till he called for his pay.

It is very difficult to see how such a custom could be proved. It could not be proved by showing that it was the custom of millers to make such a stipulation a part of

May Term, 1859.

the contract; because that would make the question of liability one not of custom, but of special contract.

Such a custom could only be proved by showing that the *Indianapolis* millers had long been in the habit of thus receiving wheat and losing it, or having it destroyed, and that the sellers did not claim pay for it, in such cases—in short, that losses of wheat by millers, and exemption from liability to pay for it, had been so frequent, and for so long a time, as to have become the law of the place.

We are not called upon here to say that such a custom, if proved, would not be good, as, in the absence of the evidence, we cannot say that the instructions given in this case may not be correct when applied to that evidence; and the instructions refused we must presume correctly refused for want of such applicability.

It should be remarked that the record does state that there was "evidence offered to prove certain local customs, with a view to exemption from liability on the part of the defendant;" but this is too indefinite.

*Per Curiam.*—The judgment is affirmed with 1 per cent. damages and costs.

*L. Barbour* and *J. D. Howland*, for the appellant.
*H. C. Newcomb* and *J. S. Tarkington*, for the appellee.