### JAMES LONERGAN

*v.*

### MALCOLM N. M. STEWART.

1. CONTRACT—*whether a sale or a bailment.* When the identical thing delivered is to be restored, though in an altered form, the contract is one of bailment, and the title to the property is not changed; but when there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value, he becomes a debtor to make the return, and the title to the property is changed—it is a sale.

2. SAME—*of a deposit of grain in a warehouse.* So where grain was deposited in a warehouse, on the understanding between the warehouseman and the owner of the grain, not that the identical grain, or grain of like quality, was to be returned, but the money value thereof, to be ascertained by the market price on the day the depositor should choose to fix, the transaction was held to be sale, not a mere bailment.

3. USAGE—*how far a contract is controlled thereby.* Although usages of trade can not be set up either to contravene an established rule of law, or to vary the terms of an express contract, yet all contracts made in the ordinary course of business, without particular stipulations, expressed or implied, are presumed to be made in reference to any existing usage or custom relating to such trade, and it is always competent for a party to resort to such usage to ascertain and fix the terms of the contract.

4. So where the owner of grain deposited the same in a warehouse, taking an ordinary warehouse receipt therefor, which did not explicitly state the character of the transaction—whether as a sale or a mere bailment—it is competent, in an action by the depositor against a purchaser from the warehouseman, for the latter to show that, according to the usage in such cases, warehousemen do not keep the identical grain deposited, but ship and sell it without regard to the identity of the grain deposited by any particular person, and that depositors at a warehouse do not expect to take their grain away, but to get their money at the market price on the day they demand it—and this, as tending to give character to the transaction as a sale rather than a bailment.

5. EVIDENCE—*relevancy, when determinable.* When evidence is offered which, at the time, does not appear to have any relation to the case, and the offer to introduce it is unaccompanied by a statement that its relevancy will appear in the progress of the trial, it may properly be rejected, and its exclusion under such circumstances will not become erroneous because it may afterwards become relevant in the further development of the case; in such event the rejected evidence should be offered again, when, if excluded, an exception would lie.

6. SAME—*whether relevant.* Where the owner of grain deposited the same in a warehouse, taking an ordinary warehouse receipt therefor, the facts showing the transaction was a sale of the grain to the warehouseman, in an action of trover by the depositor against a purchaser from the warehouseman, to recover the value of the grain, such warehouse receipt is not admissible in evidence in behalf of the plaintiff.

7. PAROL EVIDENCE—*to vary the terms of a written contract.* The bill of sale for such grain, given by the warehouseman to the defendant, could not be added to, varied or enlarged by parol evidence.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

The opinion states the case.

Messrs. VAN ARMAN & VALLETTE, for the appellant.

Messrs. RANDALL, FULLER & MUNN, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of trover, originally commenced before a justice of the peace of Will county, and a verdict and judgment for the plaintiff. On appeal by the defendant to the circuit court, and on trial there by jury, there was a verdict for the defendant, and judgment rendered thereon.

To reverse this judgment the plaintiff appeals, and assigns several errors, all of which may fairly be embraced in one, and that is, the exclusion of the evidence offered by appellant.

To determine the propriety of this ruling of the court, a brief statement of the facts is necessary.

It appears that, in the month of January, 1867, one Barnabas Bradt was the owner and occupier of a grain warehouse at Channahon, in Will county, in which month appellant delivered to Bradt, at his warehouse, five hundred and ninety-one bushels of corn in the ear, taking from him this receipt:

CHANNAHON, January 29, 1867.

Received in store from wagons 591 bushels ears of corn, from James Lonergan, subject to the order of himself hereon on payment of charges. Storage free—risk of fire and heating excepted—591 bushels, — lbs.

B. BRADT, per O. J. C.

Sometime in June following, Bradt formally sold and delivered to appellee the warehouse and its contents, the corn delivered by the plaintiff being therein at the time.

After this sale, appellant presented this receipt to appellee, and demanded the corn, offering to pay all charges, but appellee refused to recognize the receipt, and denied any liability under it, and claimed the warehouse and its contents as his own by virtue of his purchase from Bradt. Hence this suit.

It is very evident the various rulings of the court, to which exceptions were taken by appellant, were based upon the hypothesis that the transaction in regard to this corn was a sale and not a bailment. If that theory is correct, then the rulings were proper. Was it a sale or a bailment? What is the testimony?

The plaintiff testified that he put five hundred and ninety-one bushels of ears of corn in Bradt's warehouse at Channahon; he put it in store, supposing he could sell it when he wished; that he had never sold, nor in any way parted with his property in the corn, except to store it subject to his order; Bradt bursted up before he was ready to sell; Stewart, the defendant, succeeded Bradt in the possession of the warehouse property; Bradt sold out to Stewart; he presented his receipt and made a demand of Stewart for the corn after he came into possession of the warehouse property, in August or September, and before commencing suit; Stewart refused to pay him or to deliver the corn; understood Stewart shelled and shipped the corn to Chicago; highest price of corn from the sixth of June to September, the time of commencing the suit, was ninety cents; never gave the defendant, nor anybody else, permission to sell or dispose of his corn; it was disposed of without his permission.

On his cross-examination, a very different phase is put upon the transaction. He, on such examination, testified that he got twenty dollars of Bradt before the transfer to defendant; got a barrel of salt from him at another time; about the twelfth of August, 1867, he took out an attachment before Esquire Young against Bradt for the same corn; did not have the writ served, and dropped it. The corn was left subject to his order; was put in cribs with other corn; others put corn in the same cribs; at the time he put in his corn expected to get whatever corn would be worth the day he was ready to sell, and expected to sell it to Bradt, and have his money any day he called and demanded it, at the price of that day; did not expect to get the corn again, but expected the money for it;

don't know what became of his corn; don't know who shipped it off; don't know whether defendant took possession of his corn or not; he made affidavit before Esquire Young, in Wilmington, that Barnabas Bradt was indebted to him in the sum of $438 for this same corn that he has been testifying about, and the affidavit was made to get an attachment against Bradt's property; they, Bradt and Colby, did not agree to pay the money on any given day, but at any time when he, witness, fixed the price; he was to get the market price of the day he should fix; there was no understanding what was to be done in case they failed to pay the money when he fixed the day.

We have been careful to give a literal copy of the plaintiff's testimony as we find it in the record, and we think it impossible to read it without coming to the conclusion that the corn was sold to Bradt, the seller choosing the day on which he would demand the price. How, otherwise, is it possible to account for the payment by Bradt of twenty dollars before Bradt sold to defendant, and a barrel of salt at another time; and, above all, how could plaintiff, in August, 1867, make an affidavit that Bradt was his debtor for this corn, and obtain an attachment on his property? It is impossible to consider the transaction in any other light than as a sale. The corn was delivered in January, 1867. Bradt sold out the whole concern to defendant the seventh of June following. On the twelfth of August thereafter, plaintiff makes the affidavit of indebtedness.

Appellant's counsel seem to think this affidavit for an attachment "makes no figure in this case;" that he might have commenced such a suit under mistake of his rights or of Bradt's responsibility, and if he chose to discontinue the suit, it would be as though he had never commenced it. The authority he cites—1 Ch. Pl. 252—is not disputed. A party has an election of actions, and may discontinue one without prejudice, but that is not the question. This plaintiff made solemn oath that he had sold this corn to Bradt, and that Bradt owed him therefor $438. Shall he not be believed?

That it was a sale and not a bailment is apparent, not only from the testimony of the plaintiff, but also by that of Thornburg, one of his witnesses. Thornburg says, it is the custom of warehousemen to ship and sell grain right along. They do not keep the identical grain on hand; that a depositor at a warehouse does not expect to take his grain away, but to get his money at the market price on the day he demands it.

Laying out of view the affidavit of plaintiff charging indebtedness by Bradt for this corn, these facts disclosed bring the case within the principle generally recognized by courts, by which the character of such transactions is to be determined. That principle is, when the identical thing delivered is to be restored, though in an altered form, the contract is one of bailment, and the title to the property is not changed, but when there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value, he becomes a debtor to make the return, and the title to the property is changed—it is a sale. Thus, Story: "The distinction between the obligation to restore the specific things, and the obligation to return other things of the like kind and equal in value, holds in cases of hiring as well as in cases of deposits and gratuitous loans. In the former cases, it is a regular bailment; in the latter, it becomes a debt or innominate contract. Thus, according to the famous law of Alfenus, in the Digest, if an ingot of silver is delivered to a silversmith to make an urn, the whole property is transferred, and the employer is only a creditor of metal equally valuable which the workman engages to pay in a certain shape, unless it is agreed that the specific silver and none other, shall be wrought up into the urn." Story on Bailments, sec. 439; Jones on Bailment, 102; *Hurd* v. *West*, 7 Cowen, 752, note *a*; *Newton* v. *Woodruff*, 2 Comst. 153; *Ewing* v. *French*, 1 Blackf. 353; *Chase* v. *Washburne*, Ohio St. Rep. 244.

As this identical corn was not to be returned, or corn of like quality, but the money value, the proprietary interest

4—55th Ill.

passed to the depositary, and such is shown by the proof to have been the intention of the parties in this case.

We can not well understand how a view different from this could be entertained on these facts. Suppose Bradt had sold this corn, mixed as it was with the corn of others, to a grain dealer in Chicago or elsewhere, instead of selling it to the defendant, could it be claimed the purchaser got no title by such purchase? It is not at all like any of the cases cited by appellant. In those cases, the title had never passed out of the real owners by sale or otherwise. Here it had, as is conclusively shown by the plaintiff's own testimony and acts.

We will now consider the ruling of the court excluding the receipt from the jury.

That it was properly excluded we entertain no doubt. It was not executed by the defendant, and no foundation had been laid for its introduction, nor was the offer preceded by any statement that the defendant would be connected with it by proof. The relevancy, at the stage of the cause at which it was offered, unaccompanied by any statement, was not shown and was not apparent. It was in the discretion of the court to admit it or not. If, in the progress of the cause, it became relevant, it should have been again offered, and if excluded an exception would lie. It was not offered a second time, and when offered it had no relation to the case. *Lombard* v. *Cheever*, 3 Gilm. 473 ; *Hulick* v. *Scovil*, 4 Ib. 168 ; *Tefft* v. *Ashbaugh*, 13 Ill. 603 ; *Dunning* v. *Matthews*, 16 Ill. 311.

Appellant cites the case of *Rogers* v. *Brent*, 5 Gilm. 573, as favoring a rule somewhat different as to the admission of testimony not apparently relevant, but the judge who delivered the opinion in that case also delivered the opinion in *Dunning* v. *Matthews*, 16 Ill. 311, and he says, " the most cursory glance will show that this case is, in no degree, like that of *Rogers* v. *Brent*, 5 Gilm. 573."

But we do not consider, if the receipt had been admitted, it could have changed the result when considered in connection with the testimony of the plaintiff himself and of Thornburg. We have remarked sufficiently on this already.

It is an ordinary warehouse receipt, the nature of which was fully explained by the testimony of plaintiff and his witnesses. It was well understood by the parties to it, and it was their intention that the identical corn was not to be returned, but that it was to be shipped and sold by Bradt in the usual course of his business. This being so, Bradt became the owner of the corn, as all the authorities hold. Although it is true, usages of trade can not be set up either to contravene an established rule of law, or to vary the terms of an express contract, yet all contracts made in the ordinary course of business, without particular stipulations, expressed or implied, are presumed to be made in reference to any existing usage or custom relating to such trade, and it is always competent for a party to resort to such usage to ascertain and fix the terms of the contract. *Sewall* v. *Gibbs*, 1 Hall (Superior Ct.) 602. Suppose the warehouse in which this corn was deposited had been consumed by fire with its contents, can it be doubted the loss would fall upon Bradt, in view of the intention of the parties to this transaction, and to the usage established by the plaintiff's testimony. We think there can be no doubt.

The views we have here expressed dispose of the rulings of the court upon other matters of evidence of which appellant complains. On the theory this corn was sold to Bradt, the testimony excluded was wholly irrelevant. The last interrogatory propounded to Whitten was peculiarly objectionable, when it is considered that the bill of sale from Bradt to the defendant was offered in evidence by the plaintiff. Its terms could not be added to, varied or enlarged by the testimony sought by the interrogatory. The writing spoke for itself, and expressed the contract.

On the whole record we are of opinion there is no error, and justice has been done. We, therefore, affirm the judgment.

*Judgment affirmed.*