[See Case No. 8,665.]

───────

McBURNEY (GOODYEAR v.). See Case No. 5,574.

McCABE (DANIELS v.). See Case No. 3,567.

───────

## Case No. 8,667.

### McCABE v. McKINSTRY.

[5 Dill. 509.] [1]

Circuit Court, D. Minnesota. 1878.

WAREHOUSE GRAIN RECEIPTS—SALE—BAILMENT—EVIDENCE.

1. Criteria of sales and bailments in respect of grain in warehouses and elevators stated.
[Cited in Thorne v. First Nat. Bank, 37 Ohio St. 258.]

2. Parol evidence of the manner in which and the purpose for which the grain was received and the use made of it, is admissible, in connection with the receipt of the warehouseman, to determine whether, as between the immediate parties, the transaction was a sale or bailment.
[Cited in State v. McBride, 81 Mo. 349.]

3. The act of the legislature of Minnesota of March 3d, 1876, "to regulate the storage of grain," construed in connection with Rahilly v. Wilson [Case No. 11,532].

[Error to the district court of the United States for the district of Minnesota.]

The plaintiff is the assignee in bankruptcy of the Winnebago City Mill Company. The action was brought to recover $576.65 alleged to have been received by the defendant of the bankrupt April 20th, 1876, as a fraudulent preference under the bankrupt act [of 1867 (14 Stat. 517)]. On May 1st, 1876, the mill company filed its voluntary petition in bankruptcy, and on the next day was adjudged to be a bankrupt. On March 20th, 1876, the defendant authorized Cussens, the secretary of the mill company, to purchase certain wheat for him, which was done, and the following instrument executed, viz.: "550 bushels. Winnebago City, Minn., March 20th, 1876. Received of Paul McKinstry, five hundred and fifty bushels of No. 1 hard

───────

[2] [From 3 N. B. R. 344 (Quarto. 90).]

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

wheat, at his risk in case of fire, and free of storage until sold. Winnebago City Mill Co., per J. M. Cussens, secretary." The wheat was delivered to the mill company. What was done with it, or what use was made of it, does not appear from the bill of exceptions. The money value of the wheat was afterwards, April 20th, 1876, paid to the defendant and this receipt surrendered. It does not appear that this wheat, or any wheat, was on hand when this payment was made. This is the payment in respect of which the recovery is sought, on the ground that it was a fraudulent preference. There was a trial by jury and a judgment for the plaintiff. The defendant sues out a writ of error, and relies, to reverse the judgment, upon the following exceptions appearing in the bill of exceptions: "The plaintiff offered to show by the said witness that the wheat specified in said receipt as received from Paul McKinstry (which was the same wheat for which defendant was charged with having received the sum of money alleged in the complaint) was not received for the purpose of being stored or bailed, but was received for the purpose of being ground into flour at the mill of the said bankrupt, and to be paid for in money by said company, and that that was the intention of the parties; to the introduction of which evidence the counsel for the defendant then and there objected, on the ground that the said receipt was in the nature of, and was, a contract in writing, and expressed the intention of the parties, and could not be altered or impeached by parol proof."

After the evidence was concluded, the defendant by his counsel asked the court to charge the jury as follows:

"550 bushels. Winnebago City, Minn., March 20th, 1876. Received of Paul McKinstry, five hundred and fifty bushels of No. 1 hard wheat, at his risk in case of fire, and free of storage until sold. Winnebago City Mill Co., per J. M. Cussens, secretary."

First. "That if the jury believe that the wheat for which McKinstry received the money was receipted for by a receipt similar to the above in form and date, that the same was a bailment of property, and not a sale, and that the assignee cannot impeach the receipt or contract expressed as above by parol proof;" which instruction the court refused to give, and to which refusal so to charge the defendant by his counsel then and there duly excepted.

Second. "That if the jury believe that the paying of McKinstry by Cussens, for the mill company, was upon and for the wheat receipt similar to the above, that the same was not a fraudulent preference in the law."

The court refused so to charge the jury, and to which refusal the defendant by his counsel then and there duly excepted.

The following is the act of the legislature of the state of Minnesota referred to in the opinion of the court:

"An Act to Regulate the Storage of Grain. "Be it enacted by the legislature of the state of Minnesota:

"Section 1. That whenever any grain shall be delivered for storage to any person, association, or corporation, such delivery shall in all things be deemed and treated as a bailment, and not as a sale of the property so delivered, notwithstanding such grain may be mingled by such bailee with the grain of other persons, and notwithstanding such grain may be shipped or removed from the warehouse, elevator, or other place where the same was stored. And in no case shall the grain so stored, and which such bailee may hereafter be required to keep on hand, be liable to seizure upon any process of any court in an action against such bailee.

"Sec. 2. Whenever any grain shall be deposited in any warehouse, elevator, or other depository for storage, the bailee thereof shall issue and deliver to the person so storing the same a receipt or other written instrument, which shall, in clear terms, state the amount, kind, and grade of the grain stored, the terms of storage, and if advances are made, the words 'advance made;' which receipts shall be prima facie evidence that the holder thereof has in store with the party issuing such receipt the amount of grain of the kind and grade mentioned in such receipt; and any warehouseman, proprietor of an elevator, or bailee who shall issue any receipt or other written instrument for any grain received for storage, which shall be false in any of its statements, shall be guilty of a misdemeanor, and shall, upon conviction, be punished by a fine not exceeding three hundred dollars, or imprisonment in the county jail not exceeding three months, or by both such fine and imprisonment.

"Sec. 3. It shall be the duty of every person, association, or corporation receiving any grain for storage, upon the demand of the bailor, or his assigns or representatives, and tender of all charges for storage and money advanced by the bailee, and upon the faith and credit of such bailment and offer to surrender the receipt or other written instrument evidencing the receipt of such grain for storage, to deliver to the person entitled thereto a quantity of grain equal in amount and of the kind and grade delivered to such bailee. Every person and every member of any association or corporation who shall, after demand, tender, and offer, as provided in section three (3) of this act, wilfully neglect or refuse to deliver to the person making such demand, the full amount of grain of the kind and grade which such person is entitled to demand of such bailee, shall be deemed guilty of larceny, and shall be punished by fine or imprisonment, or both, as is prescribed by law for the punishment of larceny.

"Sec. 4. Whenever, upon any demand, tender, or offer, as provided in section three (3) of this act, any such bailee shall neglect or

refuse to deliver any grain received for storage, or a quantity of grain equal in amount and of the same kind and grade as received, any such bailor, or his assigns or representatives, may commence, in any court having jurisdiction thereof, an action against such bailee to recover possession of a quantity of grain equal in amount and of the same kind and grade delivered to such bailee; and in every action it shall be the duty of the sheriff, or other proper officer, to take into his possession, from the warehouse of such bailee, or other place where he may have the same, a quantity of grain equal in amount and of the same grade as that specified in the affidavit made or writ issued in such action. Such action shall be commenced and prosecuted, if in district court, in the manner provided in actions for the claim and delivery of personal property; and if in justice court, in the manner provided in actions for replevin.

"Sec. 5. Warehouse receipts given for any goods, wares, merchandise, grain, flour, produce, or other commodity stored or deposited with any warehouseman or other person or corporation in this state, or bills of lading or receipts for the same when in transit by cars or vessels to any such warehouseman or other person, shall be negotiable, and may be transferred by indorsement and delivery of such receipt or bill of lading; and any person to whom the said receipt or bill of lading may be transferred shall be deemed and taken to be the owner of the goods, wares, or merchandise therein specified, so as to give security and validity to any lien created on the same, subject to the payment of freight and charges thereon: provided, that all warehouse receipts or bills of lading which shall have the words 'not negotiable' plainly written or stamped on the face thereof, shall be exempt from the provisions of this act.

"Sec. 6. No person receiving or holding grain in store shall sell or otherwise dispose of or deliver out of the storehouse or warehouse where such grain is held or stored, the same, or any part thereof, without the express authority of the owner of such grain and the return of the receipt given for the same, except as herein provided.

"Sec. 7. It shall be unlawful for any warehouseman, or owner or keeper of any elevator, or any agent of either, to mix together any grain of different grades so received in store, or to select different qualities thereof of the same grade for the purpose of storing or delivering the same, or attempt to deliver grain of one grade for another, or in any way to tamper with any grain of other persons while in his possession or custody, with a view to securing any profit to himself or any one, without the consent of the owner.

"Sec. 8. Any warehouseman or other person violating any of the provisions of section six (6) or section seven (7) of this act, shall be deemed guilty of a felony, and, upon conviction, shall be fined in a sum of not over one thousand dollars, or imprisonment in the state prison of this state not exceeding five years, or both.

"Sec. 9. This act shall take effect and be in force from and after its passage.

"Approved March 3d, 1876."

Andrew C. Dunn. for plaintiff in error.

Gilman, Clough & Lane, for defendant in error.

DILLON, Circuit Judge. Grain may be disposed of by the owner to a warehouseman, or to an elevator or mill proprietor. either by sale or bailment. In the former the title passes; in the latter it remains with the owner. It is sometimes difficult to determine whether a particular transaction is a sale or bailment. If a specific amount of grain is deposited by the owner, which is not to be changed by the bailee, but retained until called for, when the identical grain is to be restored, this is, of course, a plain case of bailment. Under the Minnesota statute of March 3d, 1876, however it might be in the absence of such an enactment, a specific amount of grain deposited for storage does not cease to be a bailment, and does not become a sale, because it is mingled by the warehouseman, or elevator or mill proprietor, with the grain of other persons, since the statute authorizes the intermixture of grain of the same kind and grade, and recognizes the continued ownership of the depositors to a quantity of grain equal in amount to that by them respectively deposited. Prior to the enactment of the statute just mentioned, it was decided, in Rahilly v. Wilson [Case No. 11,-532], where there was an express contract, or an agreement implied from the known and invariable course of business, that the warehouseman or elevator proprietor might mingle specific wheat received with other wheat of like kind and grade, and ship or sell at his pleasure, with the further agreement or understanding that, on demand, he would pay the person from whom the grain was received the highest market price, or deliver the same amount of grain of a like quality, but not the identical grain deposited, nor grain from any specific mass, that such a transaction was a sale at the time of the delivery, and not a bailment.

There is an inherent difference between bailments and sales. If I deposit my wheat to be stored and safely kept for me, my property remains, and I extend no credit to the bailee. But if I leave my wheat with him with authority to sell it for his own benefit, and not as my agent, and upon his promise to pay me the value of the wheat, or to give me a like quantity of wheat when I shall demand it, the transaction is in essence a sale of my wheat and the extending by me of a personal credit for its value.

I see no satisfactory evidence that the act of the Minnesota legislature of March 3d, 1876, meant to abrogate essential distinctions between bailments and sales, so far, at least, as to place the grain owner who authorized the warehouseman to sell, and the grain owner who only authorized him to store and safely keep, upon the same footing. Let me illustrate. Suppose I deliver one thousand bushels of wheat to a warehouseman, or elevator proprietor, with authority to sell, and it is sold; and the next day you deliver to him one thousand bushels to store, and he does so; the next day he fails with your one thousand bushels on hand, and no more. Was it intended by the Minnesota legislature that I might take the one thousand bushels by replevin, or even share it pro rata with you? It seems to me not. The act, although not carefully drawn, and in many of its provisions far from clear, seems throughout to confine its remedial provisions to persons who deposit grain "for storage" or safe keeping, and not to those who deposit it with authority to sell.

The act is conceded to have been passed in consequence of the decision in Rahilly v. Wilson [supra], and I have felt, in view of the facts of that case, considerable embarrassment in ascertaining the precise scope of the act, although its general purpose is manifest. While it must be admitted to have made important provisions to protect persons who deliver grain for storage, I am inclined to think that it was not intended to embrace the case of persons who deliver grain to the warehouseman with express authority to sell the same on his own account, and upon an understanding that he is to pay the value of a like quantity of grain, or to deliver a like amount, upon demand; nor to embrace the case of one who leaves wheat with a miller with authority, as in Randell's Case, L. R. 3 P. C. 101, to use it as part of his current consumable stock, and upon an agreement to pay the farmer or owner the value, or to deliver a like quantity when demanded.

The 1st section of the Minnesota act, if it stood alone, might be construed to cover cases such as those just mentioned, but the 6th section forbids the warehouseman or other person "receiving or holding grain in store to sell or otherwise dispose of or deliver out of the storehouse or warehouse where such grain is held or stored, the same, or any part thereof, without the express authority of the owner of such grain and the return of the receipt given for the same." No more effectual protection can be given to depositors of grain than this requirement that their grain shall not be sold, disposed of, or delivered out of the warehouse or the place where it is stored, without their consent. Unless the depositors otherwise agree, the grain deposited, or, at all events, an equal amount of the same grade, is always kept on hand, and, without their consent, the bailee is not authorized to sell it or to consume it, and substitute other grain in its place. If it is wrongfully sold or disposed of, it may be true that the owner's rights will attach to other grain substituted in its place, or to any grain which the bailee may own, but we have no occasion now to discuss or determine the point. See 2 Kent, Comm. (12th Ed.) 590 (Mr. Holmes' note).

In case of the insolvency of the warehouseman, or mill or elevator proprietor, where the grain on hand does not equal the amount of outstanding receipts, a person who has authorized his wheat to be sold or consumed, and pursuant to which authority it has been sold and removed or consumed, cannot come in competition, as respects grain on hand, with depositors for storage only, who have never authorized any sale, disposition, or removal of their grain.

The act authorizes the depositor of grain for storage to demand and receive a receipt therefor; makes it criminal to issue a fraudulent receipt; makes the receipt negotiable and to stand for the grain, so that whoever owns the receipt owns the grain; makes it larceny wilfully to neglect or refuse to deliver the grain, and criminal to sell, dispose of, or deliver the grain without the authority of the owner and the surrender of the receipt. Under this statute the warehouseman must be careful what kind of receipts he issues. If the contract under which the grain is received is one for storage, this excludes any implied right arising from custom or usage to sell or dispose of or deliver the grain out of the warehouse.

For the protection of the depositor, the authority to sell or ship or remove the grain must be express; and for the protection of the public, the receipt given for the same must be returned.

Difficult questions may arise under this act as to the respective rights of depositors where there has been a wrongful sale or removal of the grain, and where there is not enough grain for all; but this case does not require us to consider them.

The record before the court is meagre in the statement of the facts. Prima facie, the receipt issued is one for storage; but it would appear to be remarkable if the real understanding was that the grain should not be used—that the mill company would be willing, as a business transaction, to store it free of charge for an indefinite time.

In my judgment, the receipt is not of such a nature as necessarily to exclude all parol evidence to show the character of the transaction, and to show by the acts and conduct of the parties that the wheat therein mentioned was bought for the purpose of being manufactured into flour, and was so manufactured, with the knowledge or consent of the defendant, soon after it was received.

The district judge states that his notes show the undisputed evidence was that defendant was the president of the bankrupt mill company; that he bought the wheat to enable the mill to carry on its operations; that the secretary issued to him the receipt; that the wheat was almost immediately made into flour, with the defendant's knowledge, but the receipt was not surrendered until a short time before the bankruptcy, when the money was paid to the defendant. The bill of exceptions rests upon the proposition that, even if such were the facts, it is not competent, in view of the terms of the receipt and the provisions of the statute, to show these facts, or similar facts, by parol evidence. True, it is not competent to allow a witness to state what he intended by the use of the language in which the receipt was couched, but the bill of exceptions, taken as a whole, does not show that this was permitted. The contention of the defendants seems to have been, if such a receipt was given, that no state of case could be shown by parol evidence which would make him liable to the assignee in bankruptcy. Such a proposition is too broad to be sound, and, if adopted, might be the means of not only working a fraud upon the bankrupt act, but upon bona fide grain depositors under the local statute.

Parol evidence to show the circumstances under which the grain was received, the custom and mode of doing business, the use made of the grain with the consent of the depositor, etc., has often been admitted in cases like the present. Rahilly v. Wilson [supra]; Randell's Case, L. R. 3 P. C. 101; Chase v. Washburn, 1 Ohio St. 244; Lonergan v. Stewart, 55 Ill. 44. The only change in this respect made by the local statute is that the authority to sell must be "express," but it need not necessarily be in writing.

I regret that the bill of exceptions is not more full and precise, but, as I construe it, no error is affirmatively disclosed, and the judgment below is affirmed. Affirmed.