Filed Sept. 16, 1884.

---

No. 11,747.

RICE ET AL. *v.* NIXON.

|     |     |
| --- | --- |
| 97 | 97 |
| 125 | 331 |
| 126 | 123 |

BAILMENT. — *Contract.* — *Sale.* — *Warehouseman.* — *Commingling of Grain.* — *Negligence.*—Where a warehouseman receives grain to be stored for the owner, and places it in a common bin with his own and that received from other depositors, and sells from this receptacle, retaining always sufficient to supply each owner, the contract continues one of bailment, and the warehouseman is not liable for a loss resulting from an accidental fire not attributable to his wrong or negligence.

From the Fountain Circuit Court.

*J. S. Nave, B. F. Hegler, W. S. Potter* and *A. A. Rice,* for appellants.

*T. F. Davidson,* for appellee.

ELLIOTT, C. J.—The appellee was a warehouseman, and it was his custom to receive wheat on deposit and to place it in a common bin with wheat bought by him, and it was also his custom to sell wheat from this bin, but of this custom the appellants had no knowledge.   In August, 1882, the appellant Victoria Rice deposited with the appellee two hundred and ten bushels of wheat; this was thrown into the common bin in accordance with the custom of the appellee, and with it was mingled wheat bought by him and wheat stored by other depositors, and from this bin wheat was sold, from time to time, but there was always in the bin wheat enough to supply all depositors, and at any time before the destruction of the warehouse by an accidental fire the appellant could have received from the bin all the wheat she had deposited.   Some time after the storage of the wheat the

Rice *et al. v.* Nixon.

warehouse and all its contents were destroyed by fire, but the fire was not attributable to the wrong or negligence of the appellee. No demand was made for the wheat until after its destruction. The wheat was stored with the appellee, and there was no agreement that the bailor should have an option to demand the grain or its value in money.

There are cases in which a bailee is responsible for the loss of goods where he commingles them with his own, but this principle does not apply where a warehouseman receives grain to be stored for the owner. Articles of such a character can be separated by measurement, and no injury result to the owner from the act of the warehouseman in mingling them with like articles of his own. This doctrine is older, at least, than *Lupton* v. *White*, 15 Vesey Jr. 432, for there Lord ELDON said: "What are the cases in the old law of a mixture of corn or flour? If one man mixes his corn or flour with that of another, and they were of equal value, the latter must have the given quantity; but, if articles of different value are mixed, producing a third value, the aggregate of both, and through the fault of the person, mixing them, the other party can not tell, what was the original value of his property, he must have the whole." Chancellor Kent takes a like view of the question and his last editor, Judge Holmes, cites a great many cases upon the subject. 2 Kent Com. (12th ed.) 365, 590. This is the view taken by the text-writers and courts generally in cases where the deposit is made with a warehouseman. Story Bail., section 40; Law of Prod. Ex., section 152; 2 Schouler Pers. Prop., section 46; 6 Am. L. Rev. 457; 2 Blackstone Com., Cooley's ed., 404, *n.* There is, however, as shown by the cases cited, some conflict of opinion, but, as said in a late work, the great weight of authority is that the contract is one of bailment and not of sale, the warehouseman and the depositor becoming owners as tenants in common. Law of Prod. Ex., section 154, auth. *n.* 9.

To the authorities cited by the authors referred to may be added *Ledyard* v. *Hibbard*, 48 Mich. 421, S. C., 42 Am. R.

Rice *et al. v.* Nixon.

474, *Nelson* v. *Brown,* 44 Iowa, 455, *Sexton* v. *Graham,* 53
Iowa, 181, *Nelson* v. *Brown,* 53 Iowa, 555, *Irons* v. *Kentner,*
51 Iowa, 88, S. C., 33 Am. R. 119, where the rule 'is carried
much farther than is necessary in the present instance.   The
rule which we accept as the true one is required by the com-
mercial interests of the country, and is in harmony with the
cardinal principle that the intention of contracting parties is
always to be given effect.   It is not unknown to us, nor can
it be unknown to any court, for it is a matter of great public
notoriety and concern, that a vast part of the grain business
of the country is conducted through the medium of elevators
and warehouses, and it can not be presumed that warehouse-
men in receiving grain for storage, or depositors in entrust-
ing it to them for that purpose, intended or expected that each
lot, whether of many thousand bushels, or of a few hundred,
should be placed in separate receptacles; on the contrary, the
course of business in this great branch of commerce, made
known to us as a matter of public knowledge and by the de-
cisions of the courts of the land, leads to the presumption that
both the warehouseman and the depositor intended that the
grain should be placed in a common receptacle and treated as
common property.   This rule secures to the depositor all that
in justice he can ask, namely, that his grain shall be ready for
him in kind and quantity whenever he demands it.   Any other
rule would impede the free course of commerce and render it
practically impossible to handle our immense crops.   It is
reasonable to presume that the warehouseman and his depos-
itor did not intend that the course of business should be in-
terrupted, and that they did not intend that the almost im-
possible thing of keeping each lot, small or great, apart from
the common mass should be done by the warehouseman.  If the
warehouseman is not bound to place grain in a separate place
for each depositor, then, the fact that he puts it in a common
receptacle with grain of his own and that of other depositors,
does not make him a purchaser, and if he is not a purchaser,
then he is a bailee.   In all matters of contract the intention

of the parties gives character and effect to the transaction, and in such a case as this the circumstances declare that the intention was to make a contract of bailment and not a contract of sale.    The duties, rights and liabilities of warehousemen are prescribed by the law as declared by the courts and the Legislature, and as matter of law it is known to us that a warehouseman, by placing grain received from a depositor in a common receptacle, and treating it as the usages of trade warrant, does not become the buyer of the grain, unless, indeed, there is some stipulation in the contract imposing that character upon him.

The cases in our own reports, cited by counsel for the appellants, do not oppose the conclusion here reached.    In *Pribble* v. *Kent,* 10 Ind. 325, the defendants received of the plaintiff one hundred and thirty-two bushels of grain, and on demand failed to deliver the wheat, and it was held that an action would lie, but the contract was held to be one of bailment, and not of sale.    It is plain, therefore, that in the case cited there was no such ruling as that asked by the appellants in the present case ; on the contrary, the ruling overturns their theory.    In *Ewing* v. *French,* 1 Blackf. 353, and *Carlisle* v. *Wallace,* 12 Ind. 252, the wheat was delivered to a miller to be ground into flour, and this was held to be a sale, on the ground that the character of the article was to be entirely changed, and a new and different article was to be given by the miller to his customer in return for the wheat. In the last of the cases cited the option of demanding wheat, flour or money was vested in the depositor, so that he had the option of making the contract one of bailment or one of sale, and he exercised that option by treating the transaction as a sale.    In the case under examination there was no option, for it is expressly found that the wheat was received by the warehouseman for storage.    The case of *Ashby* v. *West,* 3 Ind. 170, holds that one who delivers wheat to be manufactured into flour is the owner of the flour, and may maintain replevin, the court saying :    "We are clearly of the opinion that that

contract is one of bailment, and not of sale," and this is against the contention of the appellants.

In deciding that the contract was one of bailment, and not of sale, we determine the only debatable question in the case, for it has been long settled that where property in the custody of a bailee is destroyed by an accidental fire, and there has been no fault or negligence on his part, he is not liable.

We have examined the rulings on the demurrers to the answers and think they were correct, but if we were wrong in this there could be no reversal, because the special finding clearly shows the ground on which the judgment rests, and from this it appears that if the rulings were erroneous the errors were harmless.    Judgment affirmed.

