Morningstar v. Cunningham et al.

No. 12,154.

MORNINGSTAR v. CUNNINGHAM ET AL.

PLEADING.—Answer in Abatement.—Interest of Parties Plaintiffs.—An answer alleging that as to some of the plaintiffs the action ought to abate, for the reason that they have no interest in the cause of action sued on, is bad. Such matter is not properly the subject of a plea in abatement, but goes to the merits, and must be determined on the final hearing.

USAGE.—Custom.—Distinctions.—It is not essential that a usage should be shown to be so ancient " that the memory of man runneth not to the contrary," or that it should contain all the other elements of a common ᴧlaw custom.

SAME.—Usage in Particular Business.—Contract.—Evidence.—Where a usage in a particular business is known, uniform, reasonable, and not contrary to law or public policy, evidence of it may be considered in ascertaining the meaning of an ambiguous contract.

SAME.—Knowledge of Usage.—Evidence of the usage of a particular person is admissible, provided it be known to the parties, or has been so long-continued, or has become so notorious in the place or neighborhood, as to justify the presumption that it must have been known to the parties.

SAME.—Packing Houses.—Storage.—Accounting in Kind and Quantity.—In the absence of an agreement to the contrary, it may be shown that packers, of pork, by the course of business at their house, did not keep the product of each customer's hogs separate, but accounted in kind, quantity and quality, according to known, reasonable and recognized rules.

SAME.—Compensation for Slaughtering.—" Product."— Trade Meaning.— A usage of a particular packing house, and one generally prevalent among such houses, to retain certain portions of hogs packed as compensation for slaughtering, cleaning, etc., may be shown; and so, also, it may be shown that the term " product," as applied to the pork-packing business, has a known meaning peculiar to the trade, and does not include such parts of slaughtered hogs.

SAME.—Bailment.—Conversion.—Where the only practical method of conducting a business is to render to each bailor the amount of goods stored, in kind and quality, it is not a conversion of the goods bailed if the bailee treats them according to the known and usual method of conducting such business.

JURY.—Misconduct.—Setting Aside Verdict.—It is not misconduct, for which a verdict will be set aside, that during the deliberations of the jury one of them summoned the bailiff to the door of the jury-room and had him procure apples for the jury.

From the Morgan Circuit Court.

*J. Buchanan* and *L. Ferguson*, for appellant.

*G. W. Grubbs, M. H. Parks, S. Claypool, W. A. Ketcham, W. R. Harrison* and *W. E. McCord*, for appellees.

MITCHELL, J.—This was a proceeding to review a judgment recovered by Cunningham and others, against Morningstar, in the Morgan Circuit Court.

The bill for review assigned seven specific errors, as being apparent on the face of the proceedings and judgment sought to be reviewed. Copies of all the pleadings, evidence, proceedings, and judgment in the original case, are exhibited with the bill.

The court sustained a demurrer to the complaint, and from the judgment which followed upon this ruling, the appeal before us is prosecuted.

The proceeding which is the subject of the bill of review, was based upon a complaint consisting of two paragraphs. Cunningham and others were named therein as plaintiffs, and Morningstar, Henderson, Parks and Harrison were defendants.

The first paragraph of the complaint was founded upon a note and mortgage, alleged to have been executed by Morningstar to Henderson, Parks and Harrison, partners doing business under the firm name of Henderson, Parks & Co. The complaint alleges that this note and mortgage were duly sold and assigned by Henderson, Parks & Co. to the plaintiffs, by their written assignment, a copy of which is exhibited with the complaint. It appears from the instrument of assignment, that the note and mortgage were assigned to the plaintiffs and others as collateral to some obligations due from Henderson, Parks & Co., to the several assignees. The complaint averred that all the claims due to others than the plaintiffs, for whose benefit such assignment had been made, had been fully paid by Henderson, Parks & Co., and that the plaintiffs were the only parties interested in the note and mortgage thereby assigned.

The second paragraph of the complaint was on an account for money alleged to have been loaned to, and advanced for the use of, Morningstar, by Henderson, Parks & Co., which account had also been assigned and delivered by the latter to the plaintiffs.

Separate demurrers were overruled to each paragraph of the complaint. After the defendants had filed their answer, and pending the trial, on motion, the plaintiffs were permitted, over the objection of the defendant, to amend their complaint, by adding as plaintiffs the names of others, who appeared by the instrument of assignment, set out with the first paragraph of the complaint, to be assignees, and to have an interest in the note and mortgage, and other property mentioned in the assignment and thereby assigned.

A demurrer to the amended complaint, which specified as causes of demurrer, that there was a defect of parties, and that the complaint did not state facts sufficient, was overruled. This ruling is challenged as error. The names of all the assignees, in the written assignment, having been added as plaintiffs, there was no defect of parties apparent on the face of the complaint. All appeared to have an interest as assignees on the face of the instrument of assignment, and upon the face of the complaint, as amended, a cause of action was stated in favor of all the plaintiffs. There was, therefore, no error in overruling the demurrer to the complaint.

The defendant then pleaded in abatement, and alleged in his answer in that behalf, that the persons whose names had been added, by the amendment, as plaintiffs, had no interest in the action, because their claims, to secure which the assignment had been made, had been fully paid by Henderson, Parks & Co., before the bringing of the suit. The court sustained a demurrer to this plea, and this ruling is assigned as error apparent on the face of the record.

We know of no rule or authority which sustains an answer which alleges that as to some of the plaintiffs, the action ought to abate, because they have no interest in the cause of action

sued on. Matter of that description goes to the merits, and must be determined on the final hearing. It is not properly the subject of a plea in abatement, the effect of which ordinarily is to postpone the action. *Pixley* v. *VanNostern*, 100 Ind. 34.

If any error was committed in overruling the demurrer to the complaint, before it was amended, that error must be deemed cured by the subsequent amendment. It was proper for the protection of the defendant, that all who appeared as assignees, or parties interested on the face of the assignment, should be made parties. It was not so material whether they were plaintiffs or defendants, so that their rights under the contract would be barred by the event of the suit. *Durham* v. *Hall*, 67 Ind. 123.

After the plea in abatement was demurred out, the defendant filed answers and a cross complaint. The facts put forward in the special answer are, briefly : That during the season of 1879–80, Henderson, Parks & Co. were engaged in the pork-packing business, in Martinsville, Indiana. While so engaged, they agreed that if the defendant would purchase and deliver fat hogs, at their packing house, they would advance the money to him to make purchases from time to time, slaughter the hogs, when purchased and delivered to them, and prepare the product for market, and honestly account for and deliver such product in good merchantable condition upon the defendant's order. It is further alleged that Henderson, Parks & Co. were also to sell such product upon the defendant's order and account, and reimburse themselves out of the proceeds for the moneys they should advance. In pursuance of this agreement, Henderson, Parks & Co. advanced over $25,000 to the defendant. With this and other funds, he alleges he purchased twenty-five hundred and fifty head of fat hogs, and delivered them according to his agreement. After the hogs had been purchased and slaughtered, Henderson, Parks & Co. represented to the defendant that, owing to the decline in the market, the product, if sold then,

would not be sufficient to reimburse them for the money advanced, and proposed that if the defendant would execute the note and mortgage in suit, they would carry the defendant's product until there should be a rise in the market. The note and mortgage were executed as requested.

The answer charges that Henderson, Parks & Co. had appropriated a large number of the defendant's hogs to their own use; that they had not kept the product of his hogs separate from their own and others, but had mingled and confused the defendant's with their own, and had converted large quantities of it to their own use, of which facts he was ignorant at the time he executed the note and mortgage sued on. The defendant charges that the value of his property so converted was in excess of the amount of the note, and that hence he was not indebted to Henderson, Parks & Co. at the time the note and mortgage were executed.

The facts stated in the cross complaint present nothing materially different from those above summarized. After replying in denial generally, the plaintiffs, among other things, replied specially, that it was part of the agreement, in pursuance of which the defendant furnished the hogs to Henderson, Parks & Co., that the hogs furnished were to be slaughtered and packed, and the product accounted for in kind and quality, and that there was no agreement to keep the product of the defendant's hogs separate from others similar in kind. They replied further, that the entire product of the hogs furnished had been accounted for, and that it was insufficient by the sum of ten thousand dollars to reimburse Henderson, Parks & Co., for the advances made under the contract.

Similar averments are found in the answer to the cross complaint, with the additional averment, that it was part of the agreement or understanding under which the defendant's hogs were slaughtered, that the product was to be accounted for in kind and quantity, as were the products of other hogs slaughtered at the pork-packing house of Henderson, Parks

& Co., with which usage the defendant was, and had been long before, well acquainted.

Upon the issues thus made, there was a trial by a jury, and a verdict and judgment for the plaintiffs in the sum of eight thousand dollars.

During the progress of the trial, the plaintiffs were permitted to prove that according to the usual course of business, it was and always had been the usage of the packing house of Henderson, Parks & Co. to retain certain portions of hogs packed by them, such as the bristles, feet, fat from the entrails, and other offal, as compensation for slaughtering, and cleaning the hogs, and placing them upon the hooks to cool, and afterwards cutting them up.

Evidence was also given, over objection, tending to prove that the usage above mentioned was the common usage prevalent in other similar packing houses in the State of Indiana, and that the retention of the offal was but reasonable compensation.

The plaintiff also offered evidence tending to prove that the term "product," as applied to the pork-packing business, had a known meaning peculiar to the trade, and did not include such parts of slaughtered hogs as are mentioned above. Other evidence involving similar principles was admitted.

It is to be observed that the contract, out of which the controversy arose, was oral, and the evidence was such as to leave the terms and meaning of the agreement ambiguous. In such cases, evidence of the known and usual course of a particular trade or business is competent, with a view of raising a presumption that the transaction in question was according to the ordinary and usual course of the business to which it related. *Lyon* v. *Lenon,* 106 Ind. 567 ; *Mand* v. *Trail,* 92 Ind. 521 (47 Am. R. 163); *Wallace* v. *Morgan,* 23 Ind. 399; *Lonergan* v. *Stewart,* 55 Ill. 44; *Jonsson* v. *Thompson,* 97 N. Y. 642.

It is not essential that such a usage should be shown to be so ancient "that the memory of man runneth not to the

contrary," nor that it should contain all the other elements of a common law custom, as defined in the books. 1 Cooley Blackstone, p. 76, and note.

The distinction between a usage of trade and a common law custom, has not always been observed. A custom is something which has, by its universality and antiquity, acquired the force and effect of law, in a particular place or country, in respect to the subject-matter to which it relates, and is ordinarily taken notice of without proof. Thus, when a payee endorses his name on the back of a promissory note, the law, by a force of a pervading and universal custom, imports a well recognized contract into the transaction. *Smythe* v. *Scott*, 106 Ind. 245; *Walls* v. *Bailey*, 49 N. Y. 464 (10 Am. R. 407); *Hursh* v. *North*, 40 Pa. St. 241; *Munn* v. *Burch*, 25 Ill. 21.

Many other examples of such customs might be given. They are distinguishable from a usage, such as concerns us here. Where a usage in a particular trade or business is known, uniform, reasonable, and not contrary to law, or opposed to public policy, evidence of such usage may be considered in ascertaining the otherwise uncertain meaning of a contract, unless the proof of such usage contradicts the express terms of the agreement. This is so even though the usage be that of a particular person, provided it be known to the parties concerned, or provided it has been so long continued, or has become so generally known and notorious in the place or neighborhood, as to justify the presumption that it must have been known to the parties. *Carter* v. *Philadelphia Coal Co.*, 77 Pa. St. 286; *Townsend* v. *Whitby*, 5 Harr. Del. 55; *McMasters* v. *Pennsylvania R. R. Co.*, 69 Pa. St. 374 (8 Am. R. 264); Lawson Usages, p. 40.

Parties who are engaged in a particular trade or business, or persons accustomed to deal with those engaged in a particular business, may be presumed to have knowledge of the uniform course of such business. Its usages may, therefore, in the absence of an agreement to the contrary, reasonably

be supposed to have entered into and formed part of their contracts and understandings in relation to such business, as ordinary incidents thereto. *East Tennessee, etc., R. R. Co.* v. *Johnston,* 75 Ala. 596 (51 Am. R. 489); *Mooney* v. *Howard Ins. Co.,* 138 Mass. 375 (52 Am. R. 277); *Florence Machine Co.* v. *Daggett,* 135 Mass. 582; *Fitzimmons* v. *Academy, etc.,* 81 Mo. 37; *Cooper* v. *Kane,* 19 Wend. 386; *Kelton* v. *Taylor,* 11 Lea, 264 (47 Am. R. 284); 7 Cent. L. J. 383.

Thus, where it was the uniform usage of a firm to extend. a definite credit, on the sale of goods, it was held competent,. in order to avoid the statute of limitations, to prove such. usage, and that the purchaser knew it. *Hursh* v. *North, supra.* So, in *Walls* v. *Bailey, supra,* it was held competent to show the usage of plasterers in a particular place, in order to· determine the method of measuring plastering done under a contract which stipulated that a certain price per yard should· be paid. See, also,.*Lowe* v. *Lehman,* 15 Ohio St. 179; *Hinton* v. *Locke,* 5 Hill, 437; *Barton* v. *McKelway,* 2 Zab. (22 N. J.) 165; *Ford* v. *Tirrell,* 9 Gray, 401.

In like manner it is competent to prove that the words in. which a contract is expressed, as respects the particular trade or business to which it refers, are used in a peculiar sense,. and different from their ordinary import. *Jaqua* v. *Witham, etc., Co.,* 106 Ind. 545; *Spartali* v. *Benecke,* 10 C. B. 212.

The evidence, the admission of which is complained of,. was not admitted for the purpose of showing a custom in the technical sense, but to show the general course and usage of the business, as it was conducted by Henderson, Parks & Co., and others, so as to authorize the presumption, in the absence of a special contract, that the transaction in question. was according to the usual course of the business to which it. referred.

There was evidence tending to show that the defendant had knowledge of the usage in question, that he had dealt with the firm of Henderson, Parks & Co., in respect to packing. and slaughtering hogs before. It was also shown that the:

usage was reasonable, and that it had been adopted generally by packing houses, as the only practical method of conducting the business.

Where the only practical method of conducting a business, such as receiving and storing wheat, and other articles of commerce, is to render to each bailor the amount of goods stored, in kind and quality, it is not a conversion of the goods bailed, if the bailee treat them according to the known and usual method of conducting such business. To constitute a conversion, the bailee's dealing with the property must have been wholly inconsistent with the contract under which he had the limited interest. *Rice* v. *Nixon*, 97 Ind. 97 (49 Am. R. 430) ; *Preston* v. *Witherspoon*, 109 Ind. 457 ; Pollock Torts, 296.

It was competent, therefore, in the absence of an agreement to the contrary, to show that according to the course of business at their pork-house, Henderson, Parks & Co. did not keep the product of each customer's hogs separate, but that they accounted in kind, quantity and quality to each, according to known, reasonable and recognized rules.

The other evidence in respect to the usage, in pursuance of which certain offal was retained as compensation, was also properly admitted.

There was no ambiguity in the verdict of the jury, and the appellant's specification that the court erred in overruling his motion for a *venire de novo*, is not maintained by the record. The jury found a general verdict for the plaintiffs, in which they find that there is seven thousand dollars due on the note and one thousand dollars on the account. The verdict was a certain, unambiguous response to the issues made on both paragraphs of the complaint. The evidence tended to sustain the verdict.

Misconduct of the jury while deliberating on their verdict is made a ground of complaint. The extent of the alleged misconduct, as shown by the affidavits of the bailiff and some of the jurors, was, that during the deliberations of the jury,

one of the jurors summoned the bailiff to the door of the jury-room, and requested him to procure some apples for the jury; that the apples were procured in a basket, passed into the room, and eaten by the jury. It was not error to refuse to set aside the verdict on account of the misconduct alleged. *City of Indianapolis* v. *Scott*, 72 Ind. 196 (205); *Hodges* v. *Bales*, 102 Ind. 494 (499); *Carter* v. *Ford, etc., Co.*, 85 Ind. 180.

Some criticism is indulged on account of instructions given by the court, and some because of the refusal to give others asked by the appellant. Without setting out the instructions asked, or those given, it is sufficient to say the whole case was fairly presented to the jury by the court, in full, accurate and intelligent instructions, which correctly presented the law applicable to the evidence and the issues in the case.

The judgment is affirmed, with costs.

Filed April 8, 1887.