ZIETLOW ET AL. *v.* VICKERS ET AL.

[No. 14,556.   Filed June 2, 1932.]

*Rocap & McShane* and *White, Wright & Boleman,* for appellants.

*Charles M. LaFollette* and *Robert D. Markel,* for appellees.

KIME, P. J.—Center Township of Vanderburgh County, Indiana, had contracted for the erection of a schoolhouse. The construction contracts had been let in several parts. George Gottman, Jr., and Fannie Gottman doing business as the Tri-State Plumbing and Heating Company had the contract for the plumbing and heating. Under this contract they sublet to Herman F. Zietlow the installation of a heat control unit or apparatus. Early in September of 1930, Zietlow, whose place of business was Indianapolis, sent one Fox to the job for the purpose of installing this mechanism and connections. All of the mechanics and journeymen engaged in the erection of this building were members of the labor unions of their respective crafts. Soon after Fox arrived and entered upon his work he encountered the business agent of the local of the United Association of Journeymen Plumbers and Steam-fitters. It appears that Fox was a plumber and under the interpretation of the local rules he was on this job doing a steam-fitter's work and that he should work as a foreman and hire a journeyman to assist him. Zietlow, through Fox, complied with the rules of the local organization and Vickers was detailed by the business agent to be employed, and entered into the work. There was no specific contract of employment so far as the evidence discloses. Vickers had been taken by the business agent to the job Thursday, September 11, 1930, and went to work under

Fox at 1 o'clock p. m. Fox was seen bringing Vickers to work on the morning of the thirteenth. Shortly after noon on Saturday the thirteenth, Vickers, while being transported back to the city in a car owned and driven by Fox, sustained injuries from which he died.

The parties stipulated that all of the facts necessary to an award are present except whether or not the accident arose out of and in the course of the employment. The board found that it did so arise and entered an award in favor of the claimant. The only question here is whether or not there is material competent evidence to sustain the award.

As before stated, there was no specific agreement between Vickers and Zietlow. The appellee, after establishing the fact that the relation of master and servant existed, sought to show the custom obtaining in such employment. The journeymen of these crafts had reduced an agreement with the masters to writing, setting out all the conditions of employment. This written document was introduced in evidence as the best evidence of the terms and conditions of the employment. The appellant Zietlow says that this was not competent evidence because he had never signed or entered into an agreement or knew of its existence and did not belong to the Master Plumbers and Heating Dealers of Evansville. The inference is obvious that he entered into a similar agreement by complying with the requirements of the local unions and that he knew of its existence.

The other two objections are not well taken because it was not introduced as a binding agreement between Vickers and Zietlow, but only to show the customary working conditions obtaining in that vicinity between journeymen and masters.

Section 14 of this document provided that: "(1) Plumbers and steam fitters sent out of the city where

hourly tractions or automobile service is available may leave Evansville on their own time reporting on the job at 8 a. m. after which they shall be paid the regular rate of wages until they reach Evansville that night. Employer to furnish transportation, this to apply where job is of more than one day's duration, instead of paying board.

"(2) Where journeyman remains out of town on job until completion of same, he shall receive straight time from the time of leaving the city until he reaches destination and in addition to regular time traveling expenses and board shall be paid while traveling until 5 p. m.

"(3) Any employer having work out of the city shall send at least one journeyman to said job who shall receive the standard rate of wages of Local Union of the United Association whose wages are higher, in which case he shall receive wages according to the constitution of the United Association."

This was competent material evidence, for the reason that it was the best evidence of what the terms of the contract of employment provided; some reasons being that the contract of employment was absolutely silent as to wages, hours and conditions.

Where such a contract was made, which contract was silent upon the foregoing essential elements of any contract of employment, the court will turn to the best evidence available to show what the terms of the contract were. And this evidence would be the understanding of what the terms of such a contract were at Evansville and between employers of such union labor and the union laborers themselves. Had there been no written agreement setting out what those terms were, the best evidence would have been the testimony, both of the master plumbers and all members of the plumbers' union as to what the customary terms of employment

were between them. The mere fact that in this particular instance that agreement had been reduced to writing could not detract from the proof, but rather added to its sufficiency and credibility, so that the written agreement which was merely a written expression of the customary terms and conditions of employment, was not only material and competent evidence, but it was the best evidence available to show what the terms of employment were between appellee's decedent and Zietlow when he employed appellee's decedent through his agent Fox, who was certainly at that time acting within the scope of his apparent authority.

In *Morningstar* v. *Cunningham* (1887), 110 Ind. 328 at p. 333, 11 N. E. 593, 59 Am. St. 211, it is said:

> "It is to be observed that the contract, out of which the controversy arose, was oral, and the evidence was such as to leave the terms and meaning of the agreement ambiguous. In such cases, evidence of the known and usual course of a particular trade or business is competent, with a view of raising a presumption that the transaction in question was according to the ordinary and usual course of the business to which it related." (Citing cases.)

It will be noted further that this oral indefinite contract created a relationship of master and servant or of employer and employee. Of such relationship the following is said in 17 C. J. 486, Custom and Usage, §50:

> "In the relation of master and servant or of employer and employee many customs have been recognized by the courts. For example, as to the terms of a hiring; as to the conditions of the service; . . . as to the proper mode for the measurement of work; and as to wages and compensation."

See, also, *Everitt, Seedsman,* v. *Indiana Paper Co.* (1900), 25 Ind. App. 287, 57 N. E. 281; *Lupton* v. *Nichols* (1902), 28 Ind. App. 539, 63 N. E. 477.

There being ample competent material evidence to

sustain the award of the Industrial Board, the same is affirmed, and the board is directed to increase same 10 per cent as provided by law.